FILED
02/26/2024
Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 21, 2024

## STATE OF TENNESSEE v. SHAUN DEWAYNE PATTON

**Appeal from the Circuit Court for Robertson County**
**No. 74CC4-2022-CR-316      Robert T. Bateman, Judge**

_____

### No. M2023-00778-CCA-R3-CD
_____

The defendant, Shaun Dewayne Patton, appeals his Robertson County Circuit Court conviction of evading arrest, challenging the sufficiency of the convicting evidence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which TOM GREENHOLTZ and MATTHEW J. WILSON, JJ., joined.

Jessica Fay Butler, Assistant Public Defender (on appeal); Roger Nell, District Public Defender; and Dan Dalrymple, Assistant District Public Defender (at trial), for the appellant, Shaun Dewayne Patton.

Jonathan Skrmetti, Attorney General and Reporter; Christian N. Clase, Assistant Attorney General; Robert J. Nash, District Attorney General; and Ann Kroeger, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Robertson County Grand Jury charged the defendant with driving on a suspended or revoked license, evading arrest in violation of Tennessee Code Annotated section 39-16-603(b)(1), possession of cocaine, and possession of drug paraphernalia following a January 21, 2021 traffic stop.

At the defendant's February 13, 2023 trial, Corporal Lars Carlson of the White House Police Department testified that he worked as a patrol officer on the evening of January 21, 2021. While on patrol, Corporal Carlson checked the license plate of a Nissan Altima in the Criminal Justice Portal and discovered that the defendant was the

vehicle's registered owner. Corporal Carlson also learned that the defendant's driver's license had been suspended, so he activated his patrol vehicle's sirens and lights to initiate a traffic stop. He recalled that he initiated the traffic stop on Highway 76 in the Robertson County portion of White House. Corporal Carlson briefly deactivated his vehicle's sirens after the defendant drove into the left-turn lane and stopped at a traffic light because of his policy against making traffic stops in turn lanes. He testified that he reactivated his sirens when the traffic light changed from red to green and the defendant, rather than yielding, merged onto Interstate 65 and "accelerated onto the speedway."

After the defendant merged onto the interstate, Corporal Carlson called the White House Police Department's dispatch line to request assistance because the defendant was "failing to stop." He testified that the defendant merged onto the interstate at mile marker 108 and did not yield to the traffic stop until mile marker 116. Corporal Carlson recalled that his vehicle's sirens and lights were continuously activated during his pursuit of the defendant after the defendant merged onto the interstate. He also testified that no other vehicle was ever between himself and the defendant during the pursuit. Corporal Carlson stated that Officer John White joined his pursuit of the defendant between mile markers 109 and 110 in response to Corporal Carlson's call to dispatch. Corporal Carlson followed the defendant's vehicle in the right lane, while Officer White drove beside the two in the left lane. Neither officer passed the defendant during the pursuit.

Corporal Carlson's patrol vehicle was equipped with a dashboard camera, which he used to record his pursuit of the defendant. This recording was played for the jury. The recording showed that Corporal Carlson pursued the defendant for approximately eight minutes before the defendant stopped his vehicle near mile marker 116. The recording also showed Officer White accelerating prior to the end of the pursuit to identify the driver as the defendant. At the end of the pursuit, Corporal Carlson arrested the defendant on charges of evading arrest and driving on a suspended license. Corporal Carlson searched the defendant's vehicle, recovering a folded one-dollar bill, a scale, and a cut straw, each of which bore a "white powdery substance" he believed to be cocaine, as well as a grinder bearing marijuana residue. Corporal Carlson sent the folded one-dollar bill to the Tennessee Bureau of Investigation for analysis of the white substance.

On cross-examination, Corporal Carlson reiterated that he initiated the traffic stop before the defendant entered the left-turn lane to merge onto Interstate 65; and that he expected the defendant to pull his vehicle over onto the right shoulder of Highway 76 rather than merge onto the interstate. When the defendant instead entered the turn lane, Corporal Carlson deactivated his sirens and expected the defendant to yield to the traffic stop on the ramp onto the interstate. He testified that throughout his pursuit of the defendant, the defendant remained in the right lane of the interstate. He also noted that other vehicles on the interstate did not pull over during the pursuit. He stated that the defendant appeared confused when he ultimately yielded to the traffic stop.

Officer John White of the White House Police Department testified that he responded to Corporal Carlson's call for assistance on January 21, 2021. He recalled that he joined Corporal Carlson's pursuit of the defendant before they reached mile marker 109 on Interstate 65. Officer White's patrol vehicle was also equipped with a dashboard camera, and a recording of his pursuit of the defendant was played for the jury. Officer White testified that the defendant ultimately yielded to the traffic stop around mile marker 116.

On cross-examination, Officer White testified that the defendant was driving between 65 and 70 miles per hour during the pursuit. He agreed that other vehicles were present on the interstate during the pursuit and that no other motorists pulled their vehicles over in response to his and Corporal Carlson's patrol vehicles' sirens and lights. He stated that he accelerated to drive alongside the defendant's vehicle near the end of the pursuit so he could identify the defendant.

Special Agent Lela Jackson of the Tennessee Bureau of Investigation testified as an expert in the identification of controlled substances. She recalled that she examined and tested the white substance on the folded one-dollar bill recovered from the defendant's vehicle and identified it as cocaine.

After the State rested its case, the defendant chose to testify. He testified that on the evening of January 21, 2021, he dropped a friend off and then drove to work. He stated that the folded one-dollar bill bearing cocaine residue recovered from his vehicle belonged to this friend. While driving to work, he noticed he was being pursued by the police. He stated that his belated realization that he was the subject of the pursuit was due to his focusing on getting to work. He testified that his driver's license had been suspended several times, both prior to and since his January 21, 2021 arrest.

On cross-examination, the defendant testified that he heard police sirens prior to his yielding to the traffic stop and that he did not immediately pull over because "I just thought they [were] in hot pursuit of chasing other vehicles out there." He stated that it did not cross his mind to immediately pull over when Corporal Carlson initiated the traffic stop, opining that "the way the police[] are today, these days, who wants to stop?" Though he wore a hat which covered his ears during the pursuit, he testified that his hearing was unimpaired. He denied that he was reluctant to yield to the traffic stop because of the presence of cocaine and drug paraphernalia in his vehicle. On redirect examination, he stated that after eight minutes of pursuit, he ultimately yielded to the stop because he was curious as to what the police were doing.

Upon this evidence, the jury convicted the defendant of driving on a cancelled, suspended, or revoked license, second offense, evading arrest in a motor vehicle, and possession of unlawful drug paraphernalia. The jury found the defendant not guilty of possession of cocaine. After a sentencing hearing, the trial court imposed an effective two-

year sentence, which it suspended to 30 days of supervised probation. The defendant filed a timely but unsuccessful motion for new trial, followed by a timely notice of appeal.

On appeal, the defendant challenges the sufficiency of the convicting evidence, arguing that the State's proof failed to establish beyond a reasonable doubt that the defendant intentionally evaded arrest. In support of this argument, the defendant maintains that he could not have intentionally evaded arrest because he believed Corporal Carlson and Officer White were pursuing other vehicles. He contends that this lack of requisite intent is shown through trial testimony that he did not accelerate above the speed limit nor change lanes, that other motorists did not yield to the police during the pursuit, and that he pulled over soon after Officer White accelerated to drive beside him in the left lane, at which point he realized he was the subject of the traffic stop.

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379. The verdict of the jury resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

"It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." T.C.A. § 39-16-603(b)(1). As relevant here, an individual "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id*. § 39-11-302(a). An individual's intent may be inferred from the surrounding facts and circumstances. *State v. Lowery*, 667 S.W.2d 52, 57 (Tenn. 1984).

Viewing the evidence in the light most favorable to the State, we conclude that the evidence sufficiently supports the defendant's conviction. Corporal Carlson initiated the traffic stop prior to the defendant's entry onto the interstate by activating his patrol vehicle's lights and sirens, only briefly deactivating his sirens while the defendant was in the turn lane to enter the interstate. The defendant continued to drive and refused to yield to the traffic stop for approximately eight minutes, during which time the defendant testified that he was aware of the police's presence behind and beside his vehicle but nevertheless did not pull over because he believed they were pursuing other motorists. The

defendant further testified that his hearing was unimpaired during the pursuit and that he intentionally did not pull over immediately after Corporal Carlson initiated the traffic stop because "the way the police[] are today, these days, who wants to stop?" The jury also viewed dashboard camera footage of the approximately eight-minute pursuit. Upon its review of this evidence, the jury rationally inferred that the defendant knew that he was the subject of the traffic stop and nevertheless intentionally evaded arrest by driving away from the police for approximately eight minutes. We will not disturb this conclusion.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE